UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ANGEL A. RODRIGUEZ,

               *Plaintiff,*

– against –

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

               *Defendant.*

**MEMORANDUM & ORDER**
24-cv-00167 (NCM)

---

**NATASHA C. MERLE**, United States District Judge:

    Plaintiff Angel Alfonso Rodriguez brings this action against defendant Commissioner of the Social Security Administration ("Commissioner") seeking judicial review of the Commissioner's decision on plaintiff's application for disability insurance benefits. Compl. ¶¶ 1, 4, ECF No. 1. Before the Court is plaintiff's motion for judgment on the pleadings ("Motion"), ECF No. 7-1, and the Commissioner's cross-motion for judgment on the pleadings ("Cross-Motion"), ECF No. 10-1. For the reasons stated below, plaintiff's Motion is **GRANTED**, and the Commissioner's Cross-Motion is **DENIED**.

## BACKGROUND

    Plaintiff applied for disability insurance and supplemental security income on March 1, 2022. R. 23, ECF No. 5.[1] Plaintiff listed schizoaffective disorder as the basis for his application. *See* R. 66, 322. The Commissioner denied plaintiff's application on July

---

[1] Throughout this opinion, page numbers for the Certified Administrative Record ("R.") refer to the numbers found in the bottom right corner of each page, rather than the page numbers assigned by the Electronic Case Filing system ("ECF"). All other page numbers for docket filings refer to the page numbers assigned by ECF.

27, 2022, and again on September 12, 2022, after reconsideration. R. 23. Plaintiff then requested a hearing, which was held telephonically on May 11, 2023 ("Hearing"), before an Administrative Law Judge ("ALJ"). R. 23. Plaintiff submitted additional written evidence prior to the Hearing, which the ALJ admitted into the record. R. 23.

Relevant to the parties' current dispute, the record includes notes and reports from four doctors: Dr. Roberta Hellman, MD; Dr. W. Amory Carr, PhD; and state agency psychological consultants Dr. H. Rozelman, PhD and Dr. M. Butler, PhD. Joint Stipulation of Relevant Facts ("Joint Stip.") 4–9, ECF No. 12.

Dr. Hellman met with plaintiff numerous times between 2019 and 2023. *See generally* Joint. Stip. Between March and June 2022, Dr. Hellman's notes indicate that plaintiff "denied any new psychiatric complaints" and "appeared to be compliant with his medications" but that Dr. Hellman "encouraged Plaintiff to begin alcohol abuse related treatment." Joint Stip. 6 (citing R. 661, 666–76, 803–05). During a visit in July 2022, Dr. Hellman noted that plaintiff appeared similarly situated and "maintained that he continued to abstain from alcohol." Joint Stip. 8 (citing R. 810). However, Dr. Hellman noted that plaintiff also reported "drinking much less and much less frequently than in the past (unclear about exactly how much)." R. 810. Additionally, Dr. Hellman's notes indicate that between late 2022 and early 2023, "Plaintiff denied drinking, reported having no suicidal ideation, and stated that his medications were 'helping.'" Joint Stip. 9 (citing R. 818, 822, 826, 829, 835, 839, 843, 850, 854). Plaintiff tested positive for alcohol three times between December 2020 and June 2021. Joint Stip. 5–6 (citing R. 625, 633, 783).

Dr. Carr performed a "psychiatric consultative evaluation" of plaintiff in June 2022. Joint Stip. 6. Dr. Carr found that plaintiff had "no limitation in sustaining

2

concentra[tion] and performing a task at a consistent pace; and being aware of normal hazards and taking precautions"; "mild limitation in understanding, remembering, or applying simple direction and instructions"; "moderate limitation in understanding, remembering, or applying complex directions and instructions; and maintaining personal hygiene and appropriate attire"; "moderate-to-marked limitation in using reason and judgment to make work-related decisions; interacting adequately with supervisors, coworkers, and the public; and sustaining an ordinary routine and work attendance"; and "marked limitation in regulating emotion, controlling behavior, and maintaining well-being." Joint Stip. 7–8 (citing R. 440–41). During his evaluation with Dr. Carr, plaintiff stated that, while his alcohol use had "slowed down" in prior years, he "still drinks." Joint Stip. 7 (citing R. 439).

The state agency psychological consultants assessed plaintiff's "residual functional capacity" ("RFC") in July and September 2022. Joint Stip. 8, 9. Dr. Rozelman reviewed plaintiff's medical record, Dr. Carr's report, and an "activities of daily living form" filled out by plaintiff's mother on his behalf to assess plaintiff's RFC in July 2022. Joint Stip. 8–9 (citing R. 70, 85). Dr. Rozelman found that plaintiff "could 'adapt to basic, routine changes[;] . . . [r]emember [and] carryout [sic] single-step instructions[;] . . . complete simple tasks'"; and "'[i]nteract briefly and superficially with coworkers and supervisors.'" Joint Stip. 9 (citing R. 70, 85). In September 2022, Dr. Butler reviewed plaintiff's "updated" medical record and "affirmed Dr. Rozelman's assessments." Joint Stip. 9 (citing R. 103–09, 119–25). Specifically, Dr. Butler "found that Plaintiff had the RFC to 'understand, remember and apply simple directions; sustain [attention] and pace to complete simple tasks; engage others briefly and superficially; [and] set basic goals and adapt to routine changes.'" Joint Stip. 9 (citing R. 109, 125).

3

At the Hearing, plaintiff was represented by an attorney and assisted by a Spanish interpreter. R. 23. An impartial vocational expert ("VE"), April Rosenblatt, testified. Joint Stip. 2 (citing R. 55–63). Based on her "professional experience, education, and training," Rosenblatt opined that "a hypothetical individual of the same age, education, and work experience as Plaintiff with the [RFC] to perform a range of light exertion work with [certain] non-exertional limitations" could work as a housekeeper, marker, or cafeteria attendant. Joint Stip. 2–4 (citing R. 58–60). Rosenblatt further testified that "employers would tolerate off-task behavior up to 10% of the workday and anything in excess of that number would be work-preclusive." Joint Stip. 4 (citing R. 59).

On October 4, 2023, the ALJ issued a written opinion finding that the plaintiff "has not been disabled under the Social Security Act at any time from the alleged onset date [March 1, 2022] through the date of this decision." R. 24. To make this finding, the ALJ first completed the standard five-step process for determining disability while factoring in plaintiff's alcohol use and found plaintiff to be disabled pursuant to the Social Security Act. R. 26–31. Then the ALJ completed the five-step process without factoring in plaintiff's alcohol use to determine whether plaintiff would be disabled if he stopped using alcohol. R. 31–35. The ALJ found that because plaintiff could perform jobs—when not using alcohol—that existed in sufficient numbers in the national economy, he was not disabled. R. 35.

Plaintiff requested review of the ALJ's decision to the Social Security Administration Appeals Council, which declined review in November 2023. R. 1–5. Plaintiff then filed this appeal of the Commissioner's decision in January 2024. *See* Compl. Plaintiff moved for judgment on the pleadings pursuant to Rule 12(c); the Commissioner filed a cross-motion for the same relief. ECF Nos. 7, 10.

4

## STANDARD OF REVIEW

A district court reviewing a final decision of the Commissioner is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see* Fed. R. Civ. P. 12(c) (allowing courts to enter a judgment on the pleadings). Nonetheless, federal judicial review is "limited." *Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 154 (2d Cir. 2024).[2] Reviewing courts "do not substitute" their own "judgment for the agency's" or review the record *de novo*. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). Instead, "[w]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Rubin*, 116 F.4th at 154.

In conducting this review, courts must determine (1) "whether the correct legal standards were applied," and (2) "whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Rucker v. Kijakazi,* 48 F.4th 86, 90–91 (2d Cir. 2022). Whether the record contains "substantial evidence" depends on whether "a reasonable mind might accept" the evidence "as adequate to support" the ALJ's determination. *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (explaining that "[t]he phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how

---

2   Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

courts are to review agency factfinding"). The "threshold for such evidentiary sufficiency is not high"; it requires only that the record contain "more than a mere scintilla" of evidence. *Id.* at 103. The court must uphold the Commissioner's conclusion so long as it is supported by a "rational interpretation" of the evidence. *Rubin*, 116 F.4th at 155. However, courts must still "examine contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.*

"Before determining whether the Commissioner's final decision is supported by substantial evidence[,] the court must first be satisfied that the ALJ completely developed the administrative record." *Kelly v. Comm'r of Soc. Sec.*, No. 20-cv-05318, 2024 WL 5120051, at *9 (E.D.N.Y. Dec. 16, 2024). The ALJ has a "well-established" obligation to investigate and develop the record, even where a claimant is counseled—this "has been described as a bedrock principle of Social Security law." *Id.* Accordingly, where the presiding ALJ did not apply the correct legal standard or sufficiently develop the record, a court may remand the case for further proceedings. *See Sczepanski v. Saul*, 946 F.3d 152, 162 (2d Cir. 2020); *Daniels v. Kijakazi*, 617 F. Supp. 3d 180, 195 (S.D.N.Y. 2022).

## DISCUSSION

### I. Statutory and Regulatory Disability Benefit Requirements

The Social Security Administration administers social security disability insurance benefits to eligible applicants pursuant to the Social Security Act ("SSA"). *See generally* 42 U.S.C. § 301 *et. seq.* To secure benefits, an applicant must demonstrate, among other things, that he is disabled: that his impairment or combination of impairments renders him unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

6

months." 42 U.S.C. § 423(d)(1)(A). The Commissioner, acting through a presiding ALJ, assesses whether an applicant meets the statutory definition of disabled by undertaking a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). The Commissioner only advances to the next step where a determination of an applicant's disability status cannot be made at that stage. *Id.*

The first step is to evaluate the applicant's work activity; a disability determination will be denied where an applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the Commissioner "considers the medical severity of the claimant's impairment or combined impairments." *Rubin*, 116 F.4th at 147 (citing 20 C.F.R. § 404.1520(a)(4)(ii)). The third step is a determination on whether the applicant's impairments "meets or equals" one of the listings in Appendix 1 of Part 404, Subpart P ("Listed Impairment"). 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairments do not meet or equal a Listed Impairment, the Commissioner determines the claimant's RFC, which is the claimant's ability to function in a workplace despite medical limitations and "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). At step four, the Commissioner assesses whether the claimant can perform past relevant work when considering the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv).

If the claimant cannot perform his past relevant work, the fifth and final step is to consider whether an applicant, given his RFC, age, education, and work experience, can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). The claimant "bears the burden of proof in the first four steps of the sequential inquiry." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). However, at step five, "the burden shifts, to a limited extent, to the

Commissioner to show that other work exists in significant numbers in the national economy that the claimant can do." *Rubin*, 116 F.4th at 148.

If a claimant presents with drug addiction or alcoholism, he "bear[s] the burden of proving that [he] would be disabled in the absence of" that drug addiction or alcoholism. *Cage*, 692 F.3d at 120. Pursuant to the SSA, a claimant is not disabled "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).

## II.   The ALJ's Determination

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 1, 2022. R. 26. At step two, the ALJ found that he suffered from six medically severe impairments, including ankle arthritis, obesity, alcohol abuse disorder, schizoaffective disorder, depression, anxiety, and sleep disorder. R. 26. The ALJ's findings at these first two steps did not differ between the ALJ's two analyses, initially considering and then without considering plaintiff's alcohol use. *See* R. 26.

When considering plaintiff's alcohol use at step three, the ALJ assessed whether plaintiff's impairments met or equaled any Listed Impairment pertaining to mental disorders. R. 26–28; *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00. The ALJ found that plaintiff had moderate limitations in mental functioning, specifically understanding, remembering, or applying information; interacting with others; and adapting or managing himself. R. 27. The ALJ also found that plaintiff had a marked limitation in concentrating, persisting, or maintaining pace when considering plaintiff's substance use. R. 27. The ALJ found the same to be true of plaintiff without factoring in his substance use, except that the ALJ found the plaintiff's limitation changed from marked to moderate in concentrating, persisting, or maintaining pace when plaintiff was not using alcohol.

8

R. 32. The ALJ found that plaintiff's impairments did not satisfy the Listed Impairment requirement whether or not substance use was considered, and therefore the ALJ proceeded to step four. R. 27–28, 32–33.

In assessing plaintiff's RFC at step four and factoring in plaintiff's substance use, the ALJ found that plaintiff's RFC allowed him to "perform light work," including "simple, routine, repetitive tasks." R. 28. However, the ALJ found that plaintiff "would be off task 25% of the workday or more." R. 28. The ALJ based this finding in part on the evaluation performed by Dr. Carr, which the ALJ found "persuasive" because Dr. Carr "examined the claimant during a time when the claimant admitted to ongoing alcohol use" and his opinion was supported by "clinical findings concerning attention, concentration[,] and memory" elsewhere in the record. R. 30. However, the ALJ found "less persuasive" the opinions of the state agency physicians, Drs. Rozelman and Butler, because "treatment notes documenting alcohol abuse disorder" did not support or were inconsistent with their opinions. R. 30.

When assessing plaintiff's RFC at step four *without* factoring in plaintiff's substance use, the ALJ concluded that plaintiff's RFC allowed him to "perform light work," including "simple, routine, repetitive tasks." R. 33. Notably, the ALJ did not find that plaintiff would be off task during the work day if he discontinued his alcohol use. *See* R. 33. The ALJ found the reports by Drs. Rozelman and Butler persuasive with respect to plaintiff's "functioning without considering the effects of alcohol abuse" but found Dr. Carr's report "less persuasive" because "his opinion was based on a one-time examination, during a period when the claimant was actively abusing alcohol." R. 34. The ALJ also considered plaintiff's testimony and the observations of plaintiff's mother, as reported through her "third-party function report." R. 33, 34 (citing Exhibit B5E, R. 335–42). The

9

ALJ concluded that "[b]ecause the claimant's auditory hallucinations are associated with his alcohol use, as indicated in the treatment notes and the hearing testimony, alcohol use exacerbates his symptoms and further diminishes his functioning." R. 34.

At step five, the ALJ found that no jobs existed in significant numbers in the national economy that plaintiff could perform based on his age, education, work experience, and RFC, when plaintiff was using alcohol. R. 30–31. The ALJ relied on VE Rosenblatt's hearing testimony that "employers will generally tolerate up to 10% off task in addition to regularly scheduled breaks," which the ALJ found consistent with the Dictionary of Occupational Titles or otherwise based on Rosenblatt's expertise regarding "task and absenteeism limitations, tandem work, interaction with the public, and work that can be do[n]e alone." R. 31. Accordingly, the ALJ found plaintiff disabled under the SSA when factoring in plaintiff's substance use. R. 31.

However, the ALJ found that plaintiff's RFC *without* considering his substance use did not support a finding that plaintiff was disabled under the SSA because jobs exist in significant numbers in the national economy that plaintiff could perform if he discontinued his alcohol use. R. 35. The ALJ relied again on VE Rosenblatt's testimony that an individual of plaintiff's age, education, work experience, and RFC would be able to perform jobs such as housekeeper, marker, and cafeteria attendant, as defined in the Dictionary of Occupational Titles. R. 35. The ALJ credited VE Rosenblatt's testimony that each of these positions represented between 19,000 and 177,000 jobs in the national economy. R. 35.

Because the ALJ found that plaintiff is disabled when considering his substance use but not disabled without considering his substance use, the ALJ concluded that plaintiff's "substance use disorder is a contributing factor material to the determination

of disability." R. 35. Accordingly, the ALJ found that plaintiff was not disabled under the SSA. R. 35–36.

### III. The Court's Analysis of the ALJ's Determination

Plaintiff appeals the ALJ's decision on several grounds, including that the RFC determination, as assessed *without* considering plaintiff's alcohol use (the "Disputed RFC"), is not supported by substantial evidence in the record because the ALJ (i) improperly assessed the medical opinions and (ii) failed to consider plaintiff's subjective accounts. Mot. 2, 8. In response, the Commissioner contends that the Disputed RFC was appropriately based on (1) evidence of hallucinations while drinking; (2) evidence that plaintiff was previously fired for poor attendance while drinking; and (3) Dr. Hellman's notes indicating that plaintiff did not exhibit hallucinations or other mental impairments during a period in 2022 and 2023 when plaintiff "largely denied using any alcohol." Cross-Mot. 13–14.

"It has been consistently recognized that an ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment," such as schizoaffective disorder. *Armstead v. Comm'r of Soc. Sec.*, No. 20-cv-02841, 2024 WL 5077582, at *13 (E.D.N.Y. Dec. 11, 2024). When assessing a claimant's RFC, the ALJ must "consider all relevant medical and non-medical evidence of record." *Heagney-O'Hara v. Comm'r of Soc. Sec.*, 646 F. App'x 123, 126 (2d Cir. 2016) (summary order). For the reasons stated below, the Court finds that the ALJ failed to "completely develop[] the administrative record" as to plaintiff's functioning during periods of abstinence from alcohol, although it is unclear from the record if any such periods exist. Accordingly, the Court finds that a finding as to whether the ALJ's decision was based on substantial evidence would be premature. *See Kelly*, 2024 WL 5120051, at *9; *Daniels*, 617 F. Supp. 3d at 194.

### A. *Medical Opinions*

Plaintiff contends that the ALJ erred in assessing medical opinions when determining the Disputed RFC. Specifically, plaintiff argues that Dr. Carr's report, based on an evaluation undertaken while plaintiff was actively using alcohol, presents findings "consistent with later medical findings, when it is undisputed that Mr. Rodriguez was not using alcohol." Reply 2, ECF No. 11. Accordingly, plaintiff argues that this report demonstrates that his RFC is unchanged whether he is actively drinking alcohol or abstaining. The Commissioner counters that the record supports the ALJ's finding that the plaintiff's "functioning improved during periods of abstinence such that he had a less restrictive RFC" when not using alcohol. Cross-Mot. 14.

In evaluating medical opinions, the ALJ must consider the following factors, among others: supportability, consistency, the author's relationship with the claimant, and specialization. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). The "most important" factors are supportability and consistency. *Rubin*, 116 F.4th at 148. Considering the supportability of a medical opinion calls for "an inquiry geared toward assessing how well a medical source supported and explained their opinion." *Daniels*, 617 F. Supp. 3d at 189. An ALJ considers the consistency of a medical opinion through "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* The ALJ must "explain how [she] considered supportability and consistency as applied to each medical source's opinion in [her] determination or decision" and may not "give any specific evidentiary weight" to any particular opinion by default. *Rubin*, 116 F.4th at 149.

An ALJ's "failure to properly consider and apply the requisite factors is grounds for remand." *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 161 (S.D.N.Y. 2022). Similarly, if an ALJ "bases her explanation upon a misreading of the record, remand is

12

required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-cv-04630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).

Here, the ALJ found the July and September 2022 reports by Drs. Rozelman and Butler persuasive with respect to plaintiff's "functioning without considering the effects of alcohol abuse" because "treatment notes and clinical finding[s]" in the record support those opinions. R. 34. The ALJ did not explain how these reports are supported by or consistent with any notes and clinical findings. *See* R. 34. She merely referred to an unspecified finding "as discussed" elsewhere in the opinion. *See* R. 34. Presumably, the ALJ meant to refer to a discussion earlier in the Disputed RFC analysis, in which the ALJ cited Dr. Hellman's notes and clinical findings from visits with plaintiff between March 2022 and May 2023 during which plaintiff appeared generally stable.[3] R. 33. Even so, this is an insufficient explanation of the mandatory supportability and consistency factors. Although an "explanation need not be exhaustive," the Court must still be able to "glean the rationale of an ALJ's decision." *See Daniels*, 617 F. Supp. 3d at 190. The Court is unable to do so in light of the uncertainty in the record regarding plaintiff's periods of abstinence from alcohol, if any, and the ALJ's failure to explain how the opinions were supported by the record.

As the ALJ correctly noted, the record during the period between the onset date in March 2022 and the Hearing in May 2023 "contains limited follow up" treatment notes and "lacks longitudinal" treatment notes. R. 33. And the treatment notes that do exist in

---

[3]    For example, Dr. Hellman consistently reported plaintiff's appearance during this period from March 2022 through May 2023 as "well groomed and well-nourished" and his mood "stable," among other findings. R. 33 (citing R. 459–483, 796–856).

13

the record do not establish any clear periods of abstinence. For example, between March and June 2022, Dr. Hellman's notes indicate that she continued to "encourage" plaintiff on multiple occasions to begin treatment for his alcohol use. Joint Stip. 6 (citing R. 661, 666, 670, 674, 803). And in July 2022, despite plaintiff's assertions that he reported "drinking much less and much less frequently than in the past," Dr. Hellman reported it "unclear [] exactly how much" plaintiff was drinking. R. 810. Later, between September 2022 and May 2023, Dr. Hellman reported that plaintiff "denied drinking." Joint Stip. 9 (citing R. 818–54). Yet none of Dr. Hellman's treatment notes indicate that plaintiff was tested for alcohol use during this period of time.

Nor does the rest of the record include any alcohol testing, which could clarify periods during which plaintiff was actively drinking or abstaining. For example, contrary to the ALJ's finding that "the record since the alleged onset shows positive tests for alcohol use," R. 33, plaintiff's positive alcohol tests occurred prior to March 2022. Joint Stip. 5 (noting that plaintiff tested positive for alcohol three times between December 2020 and June 2021) (citing R. 625, 633, 783). And while plaintiff told Dr. Carr in June 2022 that he "still drinks," Joint Stip. 8 (citing R. 439), Dr. Carr did not report any testing or specific timeframe relating to this statement. Nor is there any indication that the ALJ considered plaintiff's testimony at the Hearing in May 2023 that he had abstained from using alcohol for "six months." *See* R. 52. This is unlike the record in *Cage*, for example, where although "the record [did] not reveal any extended periods of sobriety during the relevant period" the record included evaluations "conducted during inpatient admissions when [plaintiff] did not have access to drugs or alcohol." *Cage*, 692 F.3d at 127. Accordingly, the record developed by the ALJ fails to establish whether plaintiff abstained from alcohol during any point between March 2022 and May 2023.

14

Review of Dr. Hellman's treatment notes and clinical findings suggest that the ALJ's reliance on them to support Drs. Rozelman's and Butler's reports was based "upon a misreading of the record." *See Rivera v. Comm'r of the Soc. Sec. Admin.*, 2020 WL 8167136, at *14. Not only did the ALJ fail to explain which of Dr. Hellman's "treatment notes and clinical finding[s]" are consistent with those reports, *see* R. 34, the ALJ's seeming reference to Dr. Hellman's treatment notes and findings does not provide support for plaintiff's "functioning without considering the effect of alcohol abuse." *See* R. 34. At most, Dr. Hellman's notes indicate that it was unclear whether and when plaintiff was using alcohol or abstaining. Such "gaps" implicate the supportability and consistency of the reports of Drs. Rozelman and Butler. *Rivera*, 2020 WL 8167136, at *17 (finding failure to address "gaps between [consultative examiner's] opinion and the observations, examination results, and other clinical findings contained in his reports" as well as the "opinions of other examiners" required remand).

Furthermore, the ALJ found Dr. Carr's June 2022 report "less persuasive" because "his opinion was based on a one-time examination, during a period when the claimant was actively abusing alcohol." R. 34. Yet the ALJ provided no explanation as to how or why this report was not supported by or consistent with other parts of the record, including Dr. Hellman's notes. Instead, the ALJ only noted that plaintiff admitted using alcohol at the time of Dr. Carr's evaluation. R. 34. As discussed *supra*, the record is unclear as to whether there were periods of abstinence before or after Dr. Carr's evaluation, including based on Dr. Hellman's notes, which the ALJ correctly identified as reporting plaintiff's appearance and affect through May 2023. *See* R. 33.

Accordingly, the ALJ's failure to "explain the supportability or consistency factors" as to the three reports by Drs. Rozelman, Butler, and Carr warrants remand. *Rivera*, 2020

15

WL 8167136, at *17; *see also Russ*, 582 F. Supp. 3d at 161. Additionally, the ALJ's failure to fully develop the record as to any periods of abstinence, as well as the apparent misreading of the record regarding evidence of those periods, warrants remand. *See Rivera v. Comm'r of the Soc. Sec. Admin.*, 2020 WL 8167136, at *14.

### B. Plaintiff's Testimony

Plaintiff also challenges the Disputed RFC by arguing that the ALJ failed to properly consider his testimony at the Hearing. Mot. 8. Specifically, plaintiff contends that his testimony disclosed no significant change in his experience of auditory hallucinations—whether or not he is actively drinking. Mot. 10. In response, the Commissioner contends that the ALJ properly assessed plaintiff's credibility and relied on certain portions of his testimony to support the Disputed RFC. Opp'n 26–28.

When "evaluating a claimant's credibility," the ALJ must follow a "two-step process": first, the ALJ determines whether the claimant's impairment "could reasonably be expected to produce the symptoms alleged"; second, the ALJ determines whether and to what extent the claimant's symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Colombia B.N. v. Comm'r of Soc. Sec.*, No. 7:21-cv-10622, 2023 WL 358599, at *5–6 (S.D.N.Y. Jan. 23, 2023). The ALJ must explain any findings as to the credibility and weight of a claimant's testimony. *Brown v. Comm'r of Soc. Sec.*, 708 F. Supp. 3d 234, 249 (E.D.N.Y. 2023) (citing *Alcantara v. Astrue*, 667 F. Supp. 2d 262, 277–78 (2d. Cir. 2009)). Failure to do so warrants remand. *Brown*, 708 F. Supp. 3d at 251 (remanding where "ALJ fail[ed] to detail a basis for his conclusion regarding Plaintiff's credibility").

Here, the ALJ did not engage in the two-step process to determine which portions, if any, of plaintiff's Hearing testimony were credible. *See* R. 33. Instead, the ALJ merely

16

cited plaintiff's testimony as stating that plaintiff "was not 'like this' before he started drinking and that he is much more forgetful when he is drinking alcohol." R. 33. The ALJ did not explain whether she considered other portions of plaintiff's testimony credible. Because the ALJ also offered no explanation as to how the plaintiff's referenced testimony supported her Disputed RFC finding, the Court is unable to make an inference as to whether the ALJ considered other portions of plaintiff's testimony credible.

Plaintiff testified that his drinking caused brain damage, which now manifests in part through auditory hallucinations whether or not he is actively drinking. Specifically, plaintiff testified that he began drinking around age 9 or 10; that drinking "has damaged [his] brain" and that he "forget[s] things"; and that he "wasn't like this before," when he was "younger" and "didn't drink." R. 53. When asked whether drinking makes him "hear the voices more often," plaintiff responded: "Almost the same." R. 53. The ALJ again asked, "Almost the same as when he's not drinking?" to which the plaintiff responded, "Yes." R. 53. Plaintiff also testified that he began hearing voices in 2018 and now has "the same symptoms" whether he is drinking or not. R. 54. Yet the ALJ did not explain or offer any indication as to whether she credited plaintiff's testimony as supporting that plaintiff is "much more forgetful" when actively drinking, or "much more forgetful" due to his history of alcohol use. *See* R. 33. Nor does the ALJ's conclusion that plaintiff's "auditory hallucinations are associated with his alcohol use" clarify this ambiguity. *See* R. 34. The Court declines to "make assumptions about the ALJ's reasoning" as to the credibility and import of plaintiff's testimony "given the paucity of analysis." *Daniels*, 617 F. Supp. 3d at 193.

17

\* \* \*

Because the ALJ has failed to adequately develop the record as to plaintiff's functioning during periods of abstinence from alcohol, and failed to explain the supportability and consistency of the medical opinions and credibility of plaintiff's testimony, the Court cannot yet determine whether the Disputed RFC is supported by substantial evidence. *See Kelly*, 2024 WL 5120051, at *9; *Daniels*, 617 F. Supp. 3d at 194.

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings is **GRANTED**, and the Commissioner's cross-motion is **DENIED**. This action is **REMANDED** for further proceedings consistent with this Opinion, including but not limited to the supportability and consistency of the medical reports and the credibility of plaintiff's testimony. The Clerk of Court is respectfully directed to enter judgment and close this case.

**SO ORDERED.**

                                                                */s/ Natasha C. Merle*
                                                            NATASHA C. MERLE
                                                            United States District Judge

Dated:        February 28, 2025
                Brooklyn, New York